James W. QUARLES, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–858.

United States Court of Veterans Appeals.

Submitted June 28, 1991.

Decided Aug. 19, 1992.

As Amended Sept. 8, 1992.

James W. Quarles, pro se.

Robert E. Coy, Acting General Counsel, Barry M. Tapp, Asst. General Counsel, and Pamela L. Wood, Deputy Asst. General Counsel, were on the pleadings for appellee.

Before FARLEY, HOLDAWAY and STEINBERG, Associate Judges.

STEINBERG, Associate Judge:

The pro se appellant, veteran James W. Quarles, challenges a July 6, 1990, Board of Veterans' Appeals (BVA or Board) decision denying him entitlement to an effective date prior to November 9, 1984, for an increase in the 20% service-connected disability rating he had received for "lumbosacral strain with degenerative joint disease". *James W. Quarles*, BVA 90–22275 (July 6, 1990) [hereafter *Quarles*]. The Court holds that the Board's conclusion that November 9, 1984, is the appropriate date for the assignment of a 20% disability rating was clearly erroneous, that the Board failed to consider and address properly the impact of the veteran's pain on the severity of his low back disability prior to November 1984, and that the Board did not provide reasons or bases for its findings and conclusions adequate to permit effective judicial review. Consequently, the Court will reverse the Board's decision and remand the matter for prompt readjudication and to assign the appropriate effective date. The Court notes that this veteran's low back disability was the subject of three Board remands and five Board decisions before he received the BVA decision which forms the basis for this appeal, a decision which, ironically, the Board characterized as "generous". *Quarles*, at 4.

## I. BACKGROUND

The veteran served on active duty in the United States Army from January 1951 to February 1953. R. at 76. While in combat in Korea during the Korean conflict, he fell into a foxhole during a night air raid and, subsequently, developed knee and back problems which he attributed to that event. R. at 11, 143. The record on appeal does not contain many of the medical reports arising prior to 1982 in connection with the veteran's back disability, but the record does contain descriptions in BVA decisions of certain pre–1982 events and medical findings relating to that disability".

During active duty in 1952, the veteran, complaining of low back pain and discomfort, had reported to an Army medical clinic where the examining physician had recorded "slight local [back] tenderness". R. at 139. Approximately three months after the veteran's separation from service, a May 1953 Veterans' Administration (now Department of Veterans Affairs) (VA) medical examination report noted a slight narrowing of the L5 interspace of his spine (R. at 139) and slight tenderness over the lumbosacral joint (R. at 104). *See also* R. at 144. The veteran's first claim for service-connected disability compensation for a low back disability appears to have been granted in July 1974 by the BVA (R. at 140), and later VA Regional Office (RO) decisions make clear that at some point the veteran did receive a 10% service-connected disability rating for "lumbosacral strain" with an effective date of May 9, 1973. R. at 21.

The first definitive diagnosis of disc disease of the lumbar spine that appears in the record on appeal is contained in a 1975 medical examination report prepared by a private physician. R. at 140. During that examination, lateral bending and extension of the veteran's back were restricted to half the normal range, and straight leg raising caused back pain. In addition, the veteran experienced tenderness to deep percussion at L4 and L5, with muscle irritability. An x-ray evaluation of the lumbar spine revealed marked narrowing of the L4–L5 disc space and a traction spur. *Ibid.*

On November 24, 1982, the veteran submitted to the VA a Statement in Support of Claim, seeking an increase in his then 10% disability rating for lumbosacral strain. R. at 13. Therein, he stated: "My back condition is so bad I've had to resort to the use of an electrical impulse devise to ease the pain." *Ibid.* In support of his claim, the veteran submitted a November 18, 1982, letter prepared by his private physician, Dr. Rommel G. Childress, who the record demonstrates has treated the veteran for his back disability from, at least, August 1982. In this letter, Dr. Childress stated that he had hospitalized the veteran in August 1982 for a thorough evaluation because of the veteran's "increasing pain in the back with pain radiating to both thighs". R. at 11; 6.

Dr. Childress further noted in that letter that, on November 18, 1982, he had examined the veteran, who continued to suffer from "excessive problems with back pain". R. at 6. The August 6, 1982, CT scan report which was attached to the doctor's letter showed, he stated, that the veteran "definite[ly]" suffered from a "focally herniated disc segment". *Ibid;* R. at 9. The CT scan revealed "a [laterally] herniated disc at the L-4-5 level", and x-rays revealed "marked narrowing of the L-4-5 space with degenerative changes". R. at 7, 9. In addition, there existed a "diffusely bulging annulus at th[at] level". R. at 9. An electromyogram, also administered during the August 1982 hospitalization, showed "neurogenic changes in the anterior tibial, gastrocsoleus[,] [sic] and hamstring levels, indicating L-4-5 and L-5-S-1 root irritation". R. at 7. The diagnoses upon discharge from the hospital, to the extent to which they are decipherable from the record, include (1) acute and chronic low back strain, (2) L-4-5 disc degeneration, and (3) degenerative changes of the lumbar spine. *Ibid.* Concluding his November 18 letter, Dr. Childress stated:

In consideration of his back problem and knee problem, this patient would warrant an 85% permanent partial disability. This is based on his current pain, [his] suffering, and his very documentable disease process which is going on.

*Ibid.*

Dr. Childress reiterated his conclusions, with even more emphasis on the veteran's back disability, in a September 29, 1983, letter (which was not filed with the VA until September 1987) to the United States Office of Personnel Management. R. at 126. There, based on a December 8, 1982, examination, he stated that the veteran continued "to have significant back discomforts". He concluded:

Again, ... I maintain that this patient's permanent partial disability is 85%. I do not expect that the patient will ever be able to do work that requires excessive or prolonged sitting or any excessive bending, stooping, or lifting.

. . . .

There is a possibility that if the patient attempts to do such type activities, the ruptured disc may manifest itself to the point that the patient is forced to have surgery if there are any functional deficits or the pain becomes intractable.

R. at 126.

On December 20, 1982, in processing the veteran's November 1982 claim for an increased rating, the VA conducted a medical examination. R. at 15. Examination of the lumbar spine revealed "disc space narrowing at the L4-5 interspace[ ] [and] [a]ssociated bony spur formation anterior aspect L4 and L5." Based on these symptoms, the VA physician diagnosed "[d]egenerative disc disease L4-5". R. at 17. However, on January 21, 1983, the VARO denied the veteran's November 1982 claim for an increased rating for his service-connected lumbosacral strain on the basis that his then "currently diagnosed degenerative disc disease of L-4 and L-5 is not etiologically related to his lumbosacral strain diagnosed in service". R. at 21.

(In a parallel proceeding, on May 25, 1983, the Merit Systems Protection Board issued a decision with respect to the veteran's appeal of his November 19, 1982, removal from his position as a civilian supply clerk at the Department of Defense, Defense Logistics Agency. R. at 47. On September 20, 1982, the Defense Depot had proposed to remove the veteran from his position based on his physical inability to perform his duties. The Depot defended against the veteran's appeal of his removal by proffering to the Merit Board Dr. Childress' November 1982 letter to the VA, arguing that the veteran "was unable to tolerate excessive bending, overhead reaching, or prolonged sitting", all of which were required from a supply clerk. R. at 48. On May 25, 1983, the Merit Board concluded that the appellant was "physically unable" to perform the duties of a supply clerk and that the agency had made "every reasonable effort" to reassign him. R. at 50.)

On February 3, 1984, the BVA rendered a decision denying the veteran entitlement to an increase in his 10% disability rating

for lumbosacral strain. The Board concluded that, because the veteran's degenerative disc disease was not service connected, those symptoms could not be evaluated in relation to his lumbosacral strain. R. at 37. On April 10, 1984, the VA received from the veteran additional medical records pertinent to his claim. R. at 38–41. It appears, from the course of the VA's actions following the veteran's submission of these records, that the VA construed them as an informal claim to "reopen[ ]" his claim for an increased rating. R. at 44. (The VA's use of the term "reopened" does not accurately reflect the nature of the claim since a claim for an increased rating is a "new claim". *See Proscelle v. Derwinski,* 2 Vet.App. 629, 631 (1992).) Among these records is a February 27, 1984, medical evaluation conducted by a private physician. The physician noted: "X-ray examination of the lumbar spine shows marked narrowing at L–4–5 with spur formation and reactive sclerosis of the facets." R. at 38. Several motion tests revealed:

> He can forward flex brin[g]ing the fingertips to the midcalf, complaining of pain. He also complains of pain in the lower back with lateral bending and extension and has 50% restriction of motion.... [He] has negative straight leg raising.... He has pain in the back with Gaenslen's Fabere, straight leg raising and L–5 S–1 rock. He still shows weakness of dorsiflexion of his foot and great toe on the left.... Has decreased sensation to touch over the lateral calf on the left.... Has tenderness to deep palpation in the lower lumbar spine area.

*Ibid.* After evaluating the veteran's back, the physician concluded: "[I]t does appear this patient has degenerative disc disease with weakness in the left lower extremity and decreased sensation.... It would appear this patient is incapable of gainful employment; that he is suffering from chronic disc disease with radiculopathy and degenerative osteoarthritis of the left knee—all service incurred." *Ibid.* According to the May 15, 1984, Statement of the Case, issued shortly after the submission of the above records, on April 13, 1984, the "veteran was notified of the [RO's] deci-

sion" denying him an increased rating. R. at 44.

On May 15, 1985, the BVA again denied the veteran entitlement to an increased rating and again declined to conclude that the veteran's disc disease was related to the service-connected lumbosacral strain. R. at 56–60. On July 12, 1985, the VA apparently received a letter from the veteran requesting that it obtain, in support of his claim for an increased rating, his outpatient records from the VA Medical Center in Memphis, Tennessee. R. at 70. The VA appears to have construed this letter as a request to "reopen[ ]" the claim for an increased rating. R. at 168. (Again, the VA incorrectly used "reopen". *See Proscelle, supra.*) A February 21, 1985, VA outpatient note discussed several of the veteran's ailments and, with regard to his back, stated a diagnosis of "DJD" (degenerative joint disease) and the observation that the veteran was wearing a "TENS unit" which he had stated helped the pain. R. at 66.

On August 5, 1985, the veteran submitted additional medical records. R. at 61–64. Among these records is a November 9, 1984, letter from Dr. Childress—the basis for the effective date assigned—stating that he had last examined the veteran on October 25, 1984, and had found "limited spine motion" as evidenced in the examination report he had attached to the letter. The October examination report had stated: "The patient's back mobility is limited. He can only forward flex approximately 40 degrees. His straight leg raising is negative on the right. It causes some discomfort in the lower back on the left." R. at 62. Dr. Childress' November 1984 letter concluded: "Because of the patient's problem with his back which continues to require treatment, I still consider the patient to be approximately 85% disabled from manual duties requiring lifting, excessive stooping, bending and etc.". R. at 61. The diagnosis was, as in 1982, "acute and chronic low back strain; lumbar disc degeneration". *Ibid.* The RO again denied the claim for an increased rating. R. at 70.

On July 29, 1986, the Board remanded the case to the RO for additional develop-

ment of, inter alia, the veteran's claim for an increased rating; the RO was specifically to address the question of entitlement to service connection for "lumbar disc disease". R. at 80. The BVA's June 12, 1987, decision based on that development again ordered a remand on the issues of disc disease and lumbosacral strain because the previously ordered medical examination had failed to include a medical opinion concerning whether the veteran's lumbar disc disease was related to the trauma encountered during service or to the veteran's service-connected lumbosacral strain. R. at 111.

On July 20, 1987, pursuant to the Board's instructions, the veteran received a VA medical examination. R. at 112. That examination also did not yield an opinion as to the relationship between the veteran's disc disease and his service-connected lumbosacral strain; the physician could not make an "adequate evaluation" because of the veteran's "strain phenomena". R. at 114–15. On October 14, 1987, the RO once more denied service connection for lumbar disc disease and continued the veteran's 10% rating for lumbosacral strain. R. at 132–33.

In a March 10, 1988, written submission to the BVA, the veteran's representative asserted that the RO had not complied with the remand since the examination report did not indicate that the veteran's claims folder had been reviewed and did not contain an opinion about the relationship between the veteran's two conditions comprising his low back disability. R. at 135–36. The BVA concluded in an August 1, 1988, decision that the two back conditions could not be disassociated, and that the disc disease was also attributable to the foxhole injury. Therefore, it granted service connection for the lumbar disc disease. Describing the two disabilities as one—a "service-connected low back disorder"—the Board remanded the case to the RO for a determination of whether the veteran was entitled to an increase in his 10% disability rating. R. at 143–44.

On November 23, 1988, pursuant to the BVA remand, the RO increased the veter-

an's disability rating to 20% (deeming it "Lumbosacral Strain with Degenerative Joint Disease"), with an effective date of November 9, 1984, the date of Dr. Childress' letter. R. at 164. In a January 1989 Statement of the Case, the VA stated its reasoning for awarding the November 9 effective date: "The claim was reopened on July 12, 1985, within one year of the evidence dated November 9, 1984. This evidence from November 1984, [sic] was found to show the probability of entitlement to the increased benefit." R. at 168.

Claiming an earlier effective date of 1982 for the 20% disability rating for his low-back disability, the veteran appealed the RO's decision to the BVA. R. at 169. The BVA, in its July 6, 1990, decision which is the subject of the appellant's appeal, concluded that the 1982 records had not shown a low back disability of the "requisite degree" to increase the veteran's disability rating to 20% from that date. *Quarles*, at 3. It stated that his symptoms, "disc space narrowing, spurring, a left-sided limp, nerve root irritation and guarded motion did not qualify for more than a 10% disability evaluation". *Ibid.* The Board further stated that the level of disability exhibited in the 1982 VA examination remained constant until November 9, 1984, the date of Dr. Childress' letter. *Id.* at 4. Finally, in the "FINDING OF FACT" section of its decision, the Board concluded:

> The veteran's service-connected lumbar spine disorder was shown to be equivalent in severity to no more than mild intervertebral disc syndrome with no more than a slight limitation of motion and/or characteristic pain on motion prior to November 9, 1984.

*Id.* at 4.

## II. ANALYSIS

### A. Clearly Erroneous Fact Finding

■ Under 38 U.S.C. § 5110(b)(2) (formerly § 3010), "[t]he effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date." *See also* 38 C.F.R.

§ 3.400(*o*)(2) (1991) (to the same effect). Therefore, evidence in a claimant's file which demonstrates that an increase in disability was "ascertainable" up to one year prior to the claimant's submission of a "claim" for VA compensation should be dispositive on the question of an effective date for any award that ensues. A "claim" is defined in the VA regulations, under 38 C.F.R. § 3.1(p) (1991), as "a formal or informal communication in writing requesting a determination of entitlement, or evidencing a belief in entitlement, to a benefit." Under 38 C.F.R. § 3.155 (1991), the submission of certain medical records may constitute an "informal claim" for an increase in disability compensation.

 The BVA concluded that the veteran's low back disorder (by then comprised of lumbosacral strain and degenerative joint disease) did not become 20% disabling until November 9, 1984, the date of one of Dr. Childress' letters, and that, therefore, the veteran was not entitled to an earlier effective date. Resolution of the question of whether the Board accurately determined the effective date requires the Court to decide whether the Board erred in its factfinding. The Court reviews questions of fact using the "clearly erroneous" standard of review. Under 38 U.S.C. § 7261(a)(4) (formerly § 4061) and *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990), the Court must set aside a finding of fact as clearly erroneous when the Court is left with a definite and firm conviction, after reviewing the entire evidence, that a mistake has been committed. The Court may reach that conclusion only if there is no "'plausible basis in the record'" for the BVA findings at issue. *Gilbert*, 1 Vet.App. at 52–53 (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985)); *see Moore (Robert) v. Derwinski*, 1 Vet. App. 356, 358 (1991). Thus, if there were in the record in this case a plausible basis for the BVA's finding that the evidence in the veteran's file did not, prior to November 9, 1984, satisfy the criteria for a 20% rating, that finding would necessarily stand.

In determining whether or not a plausible basis exists for the Board's decision, the Court has evaluated (1) whether symptoms warranting a 20% rating were ascertainable prior to November 9, 1984, and (2) even if symptoms warranting a 20% rating were ascertainable earlier, whether a *claim* had been submitted within a year of their manifestation. Under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5295 (1991), a 10% disability rating for lumbosacral strain will be awarded if the claimant experiences "characteristic pain on motion"; a 20% disability rating will be awarded if the lumbosacral strain is characterized by "muscle spasm on extreme forward bending, and loss of lateral spine motion, unilateral, in standing position". And 38 C.F.R. § 4.21 (1991) provides: "In view of the number of atypical instances[,] it is not expected ... that all cases will show all the findings specified [in the Diagnostic Code]".

Since the record on appeal does not contain the purported July 12, 1985, claim for an increased rating, on which the Board relied in determining an effective date, the Court cannot be confident that it is aware of all of the claims submitted in this case. Nevertheless, July 12, 1985, serves as one date of claim by which to gauge the evidence to which the Board could have turned to determine the earliest date when the veteran's symptoms warranting the 20% rating became ascertainable. Another such date is April 10, 1984, another is November 24, 1982, and even earlier such dates, of some of which the Court is unaware, may exist.

 Based on the Court's awareness of only the 1985, 1984, and 1982 claims filed in this case, we are able to conclude that the BVA's finding that the earliest effective date could not precede November 9, 1984, was clearly erroneous. The claim the Board found pertinent to its decision was the July 12, 1985, claim. The Board found that on November 9, 1984, prior to the submission of that claim and within one year of its filing, the veteran's symptoms did satisfy the 20% rating criteria. The November 9 letter by Dr. Childress, the veteran's private treating physician, was

based on an October 25, 1984, examination of the veteran's back. The doctor's October 25 examination report, attached to the letter, stated that the veteran's back mobility was limited, that he could forward flex only 40 degrees, and that straight leg raising was "negative on the right" and caused some discomfort on the left. R. at 62. Dr. Childress concluded that because of the veteran's back problems, he *"still"* considered him to be "approximately 85% disabled" from activities requiring lifting, excessive stooping, and bending. R. at 61 (emphasis added). His diagnosis was "acute and chronic low back strain; lumbar disc degeneration". R. at 62. The Board, therefore, was clearly erroneous in finding November 9, 1984, the earliest date upon which the veteran's disability rating warranted an increase to 20% since the symptoms described in the November 9, 1984, letter had existed at least as early as October 25, 1984. Thus, the veteran was entitled to an effective date at least as early as October 25, 1984.

### B. Inadequate Reasons or Bases

■ Because the Board's decision is also deficient in the reasons or bases proffered for the implicit rejection of other potential dates (discussed below) posed by the evidence of record, and because there may exist other, earlier dates which fell within one year of a claim's submission, and upon which the veteran's 20% disability became ascertainable, the Court will remand the matter to the Board for a determination, based on a review of the veteran's complete claims file, of the earliest effective date that may be granted and for an appropriate statement of reasons or bases for the Board's determination. *See Wood (Clarence) v. Derwinski*, 1 Vet.App. 367 (1991).

It is well established that the BVA must provide in writing the reasons or bases for its findings and conclusions on all material issues of fact and law. 38 U.S.C. § 7104(d)(1) (formerly § 4004); *see Gilbert*, 1 Vet.App. at 56–57. Where, as here, the Board fails to fulfill this obligation, the Court is precluded from effectively reviewing the adjudication, and the claimant is unable to understand the Board's responses to the arguments he or she has presented to the Board. *Ibid.* The Board's decision here has left the Court with few means to decipher any rationale as to why the Board did not choose an effective date as early as February 1984, August 1982, as the veteran has contended, or even May 1953 (provided that a claim was submitted within a year) when, as the BVA stated in 1988, evidence of "lumbar disc disease" had been detected. R. at 144.

The diagnosis made and the symptoms described in the November 1984 letter (based on the October 25, 1984, examination) are not dissimilar from the February 27, 1984, private physician's report which also included a diagnosis of "degenerative disc disease" and symptoms similar to those later described by Dr. Childress, such as negative straight-leg raising, pain on straight-leg raising, and restriction of motion. Thus, the degenerative disc disease, for which the veteran obtained the higher rating, was ascertainable at least as early as February 27, 1984. There is no contradictory evidence in the file with respect to this time period, and yet the Board never addressed the February 1984 examination. The Board erred in its failure to explain its apparent rejection of this evidence. *See Gilbert*, 1 Vet.App. at 59 (among the reasons or bases for its decision, BVA must address credibility or probative value of evidence submitted by or on behalf of veteran).

That the veteran had submitted a claim for an increased disability rating within one year of that examination, so as to entitle him to an effective date earlier than October 25, 1984, seems apparent from the record on appeal. Under 38 C.F.R. § 3.155, any communication or action indicating a claimant's intent to apply for a VA benefit may be considered an "informal claim", so long as it identifies the benefit sought. Upon receipt of the informal claim, VA will, according to the regulation, forward to the claimant a formal claim form. So long as that form is submitted to VA within one year of the filing of the informal

claim, the date of the claim will be the date of receipt of the informal claim.

■ Although the February 1984 examination occurred more than one year prior to the July 12, 1985, claim, it appears, from the record on appeal, that on April 10, 1984, following the February 3, 1984, BVA decision denying an increase, additional medical records (R. at 38–41) were filed, including the February 27, 1984, examination report, which prompted an RO decision on April 13, 1984 (R. at 44), and which resulted in the BVA's issuance of another decision—on May 15, 1985 (R. at 56). It seems clear that, under 38 C.F.R. § 3.155, the VA construed as an "informal claim" the medical records submitted on April 10, 1984, since a rating decision was made based on their submission, although there is no indication that the VA ever sent the appellant a formal claim form, as directed by 38 C.F.R. § 3.155, before rendering these decisions. Since the Court cannot conclude that the VA fulfilled the obligation imposed by section 3.155(a) to "forward" to the appellant an "application form" once it had received his informal claim, the Court holds that the one-year filing period for such application did not begin to run, and VA, therefore, may not now assert upon remand that, based on the veteran's failure to file the appropriate "application form" following the submission of the April 1984 informal claim, the informal claim is not a cognizable claim for effective-date purposes. In sum, the one-year period for filing a formal claim was never triggered, and the informal claim must be accepted as the application for purposes of establishing the effective date under 38 U.S.C. § 5110(b)(2); 38 C.F.R. § 3.400(*o*)(2). *See Kuo v. Derwinski,* 2 Vet.App. 662, 666 (1992) (60–day period for filing formal appeal to BVA "did not commence to run" where VA did not mail to appellant statement of the case (SOC), as required by law, because law specifies that 60–day period runs from mailing of SOC).

Consequently, the February 27, 1984, examination came within a year of a claim's filing and, therefore, is an appropriate effective date provided that the appellant's low back disability satisfied the 20% crite-

ria by that time. On remand, the Board must take into account (1) the alternative nature of the rating criteria, under 38 C.F.R. § 4.71a (DC 5925), which are necessary to establish a 20% disability rating for lumbosacral strain; and (2) the VA policy outlined in 38 C.F.R. § 4.21 with regard to ratings, in which it is stated that VA does not require in all cases that all of the symptoms specified in a particular Diagnostic Code be exhibited by a claimant before he or she may receive a compensable rating.

In asserting to the Board that the veteran was entitled to an effective date in 1982 for an increased rating, he and his representative pointed to his removal from his job in 1982 due to his back disability (R. 169) and his hospitalization in August 1982 for *"increasing"* back pain (R. 172) (emphasis in original). The Board erred in providing only a cursory statement with respect to these arguments. Although the Board noted in its discussion that the veteran had lost his job in 1982 "due to disability", it drew the cursory conclusion that "no specific and contemporaneous manifestations of lumbar spine disablement were shown which would have supported an increased rating at that time". *Quarles,* at 4. However, during the course of the veteran's appeal to the Merit Systems Protection Board concerning his removal, both sides stipulated that he was removed from his post because of physical disability (R. 48), and, in defense of its position, the Defense Depot relied on Dr. Childress' November 1982 letter. Although, at the time of the September 20, 1982, proposed removal of the veteran from his job, Dr. Childress had not yet made his November 1982 examination and written the letter arising therefrom, there certainly existed evidence of the severity of the veteran's disability as early as August 6, 1982, when he was hospitalized for increasing back pain. R. at 9; *see also* R. at 7, 8.

■ Consequently, the Board had before it not only the statements of the veteran and his employers that by September 1982 his physical disability prevented him from performing his job, but also had medical

records from the August 1982 hospitalization and from the November 1982 examination. Therefore, its unsupported conclusion that there were "no specific and contemporaneous manifestations of lumbar spine disablement" to establish an effective date in 1982 for the increased rating fails to respond adequately to the appellant's argument that the 1982 removal from his job was significant in the determination of an effective date. *See Gilbert*, 1 Vet.App. at 56 (Board must respond to arguments advanced by appellant); *Hatlestad v. Derwinski*, 1 Vet.App. 164, 169 (1991) (*Hatlestad I*).

The Board's failure to discuss in any detail the significance of the veteran's removal from his job because of his disability points to its implicit rejection of the medical records from August and November 1982. The only indication that the 1982 hospitalization or Dr. Childress' November 1982 examination and letter were even considered by the Board is the following broad and cursory statement: "The available clinical records dated in 1982 show evidence of degenerative disc and joint disease of the lumbar spine, but not to the requisite degree for the assignment of a 20 percent disability rating". *Quarles*, at 3. The only medical record from 1982 that the Board discussed at all was a December VA examination in which disc space narrowing of the L4–5 interspace and degenerative disc disease were noted. The Board, in articulating its analysis of the evidence presented, is required to address the " 'credibility or probative value of the evidence submitted by or on behalf of the veteran' ". *Hatlestad I*, 1 Vet.App. at 169 (quoting *Gilbert*, 1 Vet.App. at 59); *Ohland v. Derwinski*, 1 Vet.App. 147, 149 (1991). This the Board did not do with respect to the August 1982 hospitalization records and the November 1982 examination and ensuing letter.

In concluding that the veteran had not demonstrated in 1982 the "requisite degree" of disability to merit an increased rating, the Board also failed to explain how the December 1982 VA examination, on which it relied, was significant to that conclusion and what aspects of the veteran's disability had changed between 1982 and 1984 enough to warrant an increase only then. The basis for the Board's distinction between the symptoms manifested during those two years cannot be discerned from its cursory statement that "[t]he disability picture remained basically the same from [December 1982] to November 9, 1984", *Quarles*, at 4. Dr. Childress' 1982 and 1984 letters are strikingly similar, and he used "still" in his 1984 evaluation. The November 18, 1982, letter stated that the veteran continued to suffer from "excessive problems with back pain" and the attached August 1982 hospitalization records show that Dr. Childress hospitalized the veteran for the increasing pain. He emphasized these hospital records in his November 1982 letter. There, the CT scan, x-ray, and electromyogram findings led to the diagnoses of chronic low back strain, L4–5 disc degeneration, and degenerative changes of the lumbar spine. Dr. Childress concluded his November 1982 letter, as well as his recounting of the results of his December 8, 1982, examination, by stating that the veteran's pain and "disease process" had rendered him 85% disabled. R. at 7, 126.

Although motion tests, which were not discussed in the 1982 letter, appear to have been conducted in October 1984 and described in the November 9, 1984, letter, the physician's conclusion was the same. Dr. Childress reiterated his concluding remarks contained in the 1982 letter and stated: "I *still* consider the patient to be 85% disabled from manual duties requiring lifting, excessive stooping, [and] bending". R. at 61 (emphasis added). As a prelude to those remarks, Dr. Childress also stated that the veteran "has previously documented severe problems with his back that showed the herniation of disc material at his lumbar level. I have enclosed a copy of the CT-scan report." R. at 61. Consequently, the Board should have articulated what it viewed as significant differences between the findings in the two letters, using independent medical authority to substantiate its conclusions. *See Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991) ("BVA panels

may consider only independent medical evidence to support their findings").

■ Moreover, if the Board found the medical evidence from 1982 insufficient, or of doubtful weight or credibility, it was, as always, free to supplement the record by seeking an advisory opinion, ordering an additional medical examination, or quoting recognized medical treatises (*see Hatlestad v. Derwinski*, 3 Vet.App. 213, 217 (1992) (*Hatlestad II*)), to substantiate its ultimate conclusion that evidence prior to November 9, 1984, did not meet the criteria for a 20% disability rating. *Ibid.* It is not the role of the Court to "substitute its judgment for that of the BVA on issues of material fact". *Gilbert*, 1 Vet.App. at 53. Consequently, the Court must be presented with a thorough explanation of the Board's reasoning for making the above distinctions if it is to review the Board's decision effectively.

■ However, the similarity between the veteran's back disabilities in 1982 and 1984 and between Dr. Childress' letters of 1982 and 1984 highlights an additional error of the Board—its failure to provide reasons or bases why the benefit-of-the-doubt doctrine should not apply in favor of the veteran. Under 38 U.S.C. § 5107(b) (formerly § 3007), when there exists an "approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant." *See also* 38 C.F.R. § 3.102 (1991). The Court has previously stated that because of the "high esteem in which our nation" holds its veterans, tradition, and now the law, mandate that the benefit of the doubt belongs with the veteran. *Gilbert*, 1 Vet.App. at 54. It is because of this high esteem, the Court has held, that the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1) applies to a Board's conclusion that a claimant is not entitled to the benefit of the doubt. *Id.* at 59. Nowhere in the Board's decision here did it even mention the benefit-of-the-doubt doctrine. Its implicit conclusion that the doctrine should not have

applied in favor of the veteran is inadequate on the record before the Court. In reaching any adverse decisions on each of the material issues discussed and referenced above, the Board must explain why the "preponderance of the evidence [is] against the claim". *Id.* at 54.

### C. Discussion of Pertinent Regulations

■ In light of the frequent references in the record to the veteran's pain from his low back disability, and despite his failure to assert the applicability of certain VA regulations requiring that a claimant's pain be considered in evaluating the disability at issue, the Board was required to consider the applicability of 38 C.F.R. §§ 4.40 and 4.45(f) (1991). *See Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *Hatlestad I*, 1 Vet.App. at 167; *see also Douglas v. Derwinski*, 2 Vet.App. 435, 438–39 (1992) (*Douglas II*); *Douglas v. Derwinski*, 2 Vet.App. 103, 107 (1992) (*Douglas I*). Regulation 4.40 provides, in pertinent part, that it is "essential that the examination on which ratings are based" adequately portray the "functional loss" accompanying the purportedly disabling condition which is the subject of the claim. In defining that term, the regulation further states that functional loss may be due to "pain, supported by adequate pathology and evidenced by the visible behavior of the claimant" and that a joint "which becomes painful on use must be regarded as seriously disabled". Regulation 4.45 states that to determine the factors causing disability of the joints (one of which is the lumbar spine, states the regulation), inquiry must be directed toward, inter alia, "[p]ain on movement". 38 C.F.R. § 4.45(f). Thus, pain on use is as important in rating a low back disability as is limitation of motion (see 38 C.F.R. § 4.71 (1991), DC 5295), since "functional loss caused by either factor should be compensated at the same rate. Hence, under the regulations, the functional loss due to pain is to be rated at the same level as the functional loss where flexion is impeded." *Schafrath*, 1 Vet.App. at 592.

The Board erred in its apparent failure to consider, or at least to discuss, how these regulations apply to the facts presented here. In the veteran's November 24, 1982, claim requesting an increase in his disability rating, he focused on the pain his back was causing him, stating: "My back condition is so bad, I've had to resort to the use of an electrical impulse device to ease the pain." R. at 13. On November 18, 1982, Dr. Childress stated that the veteran suffered from "excessive pain". The December 18, 1982, VA medical examination upon which the BVA relied to reject a 1982 effective date described the veteran's behavior in a way which connotes that he was in pain: "The veteran guards back on undressing and during all maneuvers.... [T]he veteran has a Tens unit with four electrode pads attached to the lower lumbar region." R. at 18. When the veteran appealed to the BVA the adverse January 1983 RO decision, he reiterated that he was wearing a device "designed to relieve the extreme pain." R. at 23. In Dr. Childress' November 9, 1984, letter, he stated that the veteran's "major discomfort at the present is with his lower back" and that he continued to need the Tens unit. R. at 61. "Where, as here, the claimant asserts to the BVA facts which would support a rating of compensable functional disability due to pain, section 4.40 must be applied to determine if a compensable rating is warranted." *Schafrath*, 1 Vet.App. at 592.

The Board never mentioned the impact of the veteran's pain on the functional loss with respect to his low back disability. The December 1982 VA examination, although discussing the veteran's pain, did not discuss the impact of that pain on the functional loss in the low back. The Board mentioned the limitation of motion found during that examination and, despite the absence of any such notation on the examination report, concluded that the veteran experienced "no more than characteristic pain on motion". *Quarles*, at 4. The Board not only relied on a medical examination which failed to adhere to the regulation's mandate that examinations upon which ratings are based adequately portray functional loss, but it also failed to analyze,

on its own, the effect of the veteran's pain on his disability, thereby failing, as well, to make the inquiry required under section 4.45.

In addition, the Board's unsupported conclusion that in December 1982 the veteran had experienced "no more than characteristic pain on motion" is an unsubstantiated medical conclusion since, as noted above, the December 1982 VA examination report did not describe the impact of the veteran's pain on his disability. Under *Colvin*, the BVA may rest its findings only on independent medical evidence. *Id.* at 175. Consequently, the Board's error in failing to apply the regulations dealing with pain, with the requisite reasons or bases, is compounded by its inclusion of its own medical opinion about the level of the veteran's pain in 1982, a finding which must be set aside, pursuant to 38 U.S.C. § 7261(a)(3)(A) (formerly § 4061), as "arbitrary, capricious, an abuse of discretion" and "not in accordance with law".

### III. CONCLUSION

The Board's conclusion that the veteran is not entitled to an effective date prior to November 9, 1984, is a clearly erroneous finding of fact which must be set aside. 38 U.S.C. § 7261(a)(4) (formerly § 4061). In addition, the Board's unsubstantiated opinion regarding the level of the veteran's back pain must be set aside, pursuant to 38 U.S.C. § 7261(a)(3)(A). An effective date of not later than October 25, 1984, must be assigned in accordance with the facts of record.

Because the Court has found that the Board's analysis of the veteran's symptoms arising prior to October 25, 1984, does not contain an adequate statement of reasons or bases and is deficient in its failure to consider or discuss the impact of the veteran's pain on the severity of his low back disability prior to 1984, the Court is presented with an inadequate record to review in connection with the question of the appropriate effective date for the increase. Consequently, the Board's decision is reversed, and the matter is remanded to the Board for prompt readjudication of the ef-

fective-date question, in accordance with this opinion, including a critical examination of all of the evidence of record and a full written justification. *See Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991). On remand, the appellant will be free to submit additional evidence and argument on the question at issue, and the Board will "seek any other evidence it feels is necessary" to the timely resolution of this claim. *Ibid.* When all of this evidence has been assembled, the Board must assess whether the veteran is entitled to the benefit of the doubt with regard to an effective date in February 1984, or earlier, for his increased disability rating. *See* 38 U.S.C. § 5107(b); *Gilbert,* 1 Vet.App. at 55.

Accordingly, the motion by the Secretary of Veterans Affairs for summary affirmance is denied. A final decision by the Board following the remand herein ordered will constitute a new decision which may be appealed to this Court only upon the filing of a new Notice of Appeal with the Court not later than 120 days after the date on which notice of the new BVA decision is mailed to the appellant.

REVERSED AND REMANDED.