# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-3227

WENDELL ANDREWS, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 24, 2021                           Decided May 28, 2021)

*Richard V. Spataro*, with whom *Alexis M. Ivory* and *Barton F. Stichman*, all of Washington, D.C., were on the brief for the appellant.

*Jonathan G. Scruggs*, with whom *William A. Hudson*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Sarah W. Fusina*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before GREENBERG, FALVEY, and LAURER, *Judges*.

LAURER, *Judge*: United Sates Marine Corps veteran Wendell Andrews appeals, through counsel, a January 17, 2019, Board of Veterans' Appeals (Board) decision denying entitlement to a rating above 10% for chondromalacia of the right patella with degenerative joint disease (DJD) and a rating above 10% for DJD of the left knee.[1] The parties agree that we should set aside and remand the Board decision. They disagree about whether we should instruct the Board that its obligations on remand are governed by *Kutscherousky v. West*[2] and *Fletcher v. Derwinski*.[3] The parties' dispute stems from changes to VA's claim process enacted in the Veterans Appeals Improvement and Modernization Act of 2017 (AMA)[4] and its implementing regulations. As

---

[1] The Board granted service connection for bilateral pes planus, and we will not disturb that favorable finding of fact. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170-71 (2007) (noting that the Court cannot reverse the Board's favorable findings of fact). The Board also remanded the matters of service connection for hip and back disabilities; we will not address those decisions because a Board remand "does not represent a final decision over which this Court has jurisdiction." *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004). The Board denied a rating above 10% for left knee instability. Mr. Andrews does not challenge this part of the Board decision, and the Court will not address it on appeal. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc).

[2] *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order).

[3] *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991).

[4] Veterans Appeals Improvement and Modernization Act of 2017 (AMA), Pub. L. No. 115-55, 131 Stat. 1105

explained below, we hold that, because under the AMA the record in appellant's case is limited to the evidence of record at the time of the agency of original jurisdiction (AOJ) decision, *Kutscherousky* and *Fletcher* do not apply as far as they allow for submission of additional evidence or require the Board to independently develop a claim. Even so, we still expect the Board to critically examine the justification for the decision, reexamine the evidence of record, and issue a timely, well-supported decision.

## I. BACKGROUND

Because the parties agree about the scope of the Board's error, we only briefly recount the facts underlying this appeal. Mr. Andrews has been service connected for his knee disabilities since the 1980s. Most recently, he sought increased ratings for his disabilities in September 2015.[5] To help develop his claim, VA afforded Mr. Andrews an exam in September 2017.[6] At that exam, he was diagnosed with DJD of the left knee and chondromalacia patella with DJD of the right knee.[7] Mr. Andrews reported knee pain that increased with standing and walking and greater functional impairment after repeated use.[8] In addressing this information, the VA examiner explained that he could not opine without speculating about how pain, weakness, fatigability, or incoordination impacted functional ability with repeated use over time because appellant was not experiencing a flare-up at the time of the exam.[9] Based on this exam, VA denied Mr. Andrews higher ratings for left and right knee disabilities in an October 2017 rating decision.[10]

In response, Mr. Andrews filed a Notice of Disagreement (NOD) and elected to participate in VA's Rapid Appeals Modernization Program (RAMP) through the supplemental claim lane.[11]

---

(codified as amended in scattered sections of 38 U.S.C.).

[5] Record (R.) at 1457.

[6] R. at 968-78.

[7] R. at 968.

[8] R. at 968-70.

[9] R. at 971-72.

[10] R. at 913-46.

[11] R. at 900-10.

VA also denied this supplemental claim.[12] Mr. Andrews then appealed to the Board under the direct review docket, leading to the Board decision on appeal.[13]

## II. ANALYSIS

The parties agree that we should set aside and remand the Board decision because the Board failed to address the reasonably raised issue of whether 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5259, applies to appellant's partial meniscectomies.[14] They also agree that the Board erred by relying on the September 2017 VA exam, which they consider inadequate because the examiner did not adequately address why he could not opine, without resorting to speculation, whether pain weakness, fatigability, or incoordination limited Mr. Andrews's functional ability with repeated use over time.[15]

Thus, the Court will remand the Board decision for VA to provide a new exam and for the Board to provide an adequate statement of reasons or bases.[16] And because we are remanding the matter, we need not address Mr. Andrews's other contentions about the exam or arguments about Board error that would warrant no broader remedy.[17] At this point, Mr. Andrews and the Secretary part ways.

They disagree about whether the Court should instruct the Board about Mr. Andrews's rights on remand, and if so, what that instruction should be. In his opening brief, Mr. Andrews argues that "the Due Process Clause of the Fifth Amendment, Title 38, U.S.C., and this Court's

---

[12] R. at 269-82.

[13] R. at 41-43.

[14] *See Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (holding that the Board must, in its statement of reasons or bases, discuss all issues raised by the claimant or reasonably raised by the record), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1335 (Fed. Cir. 2009); 38 C.F.R. § 4.71a, DC 5259 (2020).

[15] *See* R. at 971; *Mitchell v. Shinseki*, 25 Vet.App. 32, 44 (2011) (holding that, for a VA joints exam to be adequate, the examiner must portray the extent of functional loss or limitation due to pain and the other factors set forth in 38 C.F.R. §§ 4.40 and 4.45, including pain with repetitive use and on flare-up); *see also Sharp v. Shulkin*, 29 Vet.App. 26, 34-35 (2017) (holding that an examiner's refusal to offer a flare opinion without resort to speculation is adequate only when it is "clear that [it] is predicated on a lack of knowledge among the 'medical community at large' and not the insufficient knowledge of the specific examiner").

[16] *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (stating that remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

[17] *See Mahl v. Principi*, 15 Vet.App. 37, 38 (2001) (per curiam order) ("[I]f the proper remedy is a remand, there is no need to analyze and discuss all the other claimed errors that would result in a remedy no broader than a remand.").

case law all require that the Board expedite the proceedings . . . and provide the [sic] Mr. Andrews with an opportunity for a hearing at the Board and to submit additional evidence to the Board."[18]

For his part, the Secretary believes that it is premature for us to decide Mr. Andrews's rights on remand. Even so, he agrees with Mr. Andrews that the Board must expedite these proceedings on remand because that is required both by 38 U.S.C. § 7112 and 38 C.F.R. § 20.800(d).[19] But the Secretary argues that Mr. Andrews cannot submit more evidence because this option is unavailable under the direct review docket that he selected when he appealed to the Board under the AMA.

In his reply brief, Mr. Andrews informed us that he no longer plans to ask for a hearing on remand.[20] Thus, the question of expeditious treatment and entitlement to a hearing do not require resolution. Instead, the real dispute is whether Mr. Andrews can submit more evidence on remand and what the Board must do in response to this evidence. At its core, this is a question about how *Fletcher* and *Kutscherousky* apply within the new process Congress created through the AMA. Thus, we will next review these precedential decisions.

### A. *Fletcher* and *Kutscherousky*

In *Fletcher*, we remanded a Board decision that denied a rating above 50% for the veteran's post-traumatic stress disorder because the Board failed to provide adequate reasons or bases.[21] We then cautioned the Board that "[w]e do not mean to imply that a remand, such as is done here, is merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement."[22] Instead, "[a] remand is meant to entail a critical examination of the justification for the decision. The Court expects that the [Board] will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision."[23]

Then in *Kutscherousky* we faced a situation like the one we have here. There was no dispute that the Board erred, but the parties needed the Court to delimit appellant's rights on remand. After

---

[18] Appellant's Brief (Br.) at 15.

[19] Secretary's Br. at 24-25.

[20] Appellant's Reply Br. at 2.

[21] *Fletcher*, 1 Vet.App. at 395.

[22] *Id*. at 397.

[23] *Id*.

4

the Court remanded the decision and mandate issued, the Secretary asked that the Court "(1) vacate the Court's order, (2) recall the Court's mandate, and (3) permit him to amend his February 2, 1999, remand motion."[24] Among the language the Secretary wanted to add to the remand motion was an instruction that "[o]n remand, 'appellant should be free to submit additional evidence and argument on the questions at issue.'"[25]

In addressing the Secretary's request, we noted that previously "th[is] Court stated that on remand 'the appellant will be free to submit additional evidence and argument on the question at issue, and the Board will seek any other evidence it feels is necessary to the timely resolution of this claim.'"[26] We then noted that we would clarify whether this particular language "is . . . a holding or merely a term imposed by the Court for the carrying out of its mandate in a particular case."[27] In the end we held that, unless stated otherwise, appellants had 90 days after the Board mailed them a postremand notice to submit evidence or request a hearing. We also reiterated our holding from *Fletcher* that "the Board may seek other evidence it considers necessary to the timely resolution of the remanded matter" and "if the Board remands the case to an AOJ, the Board must reiterate the appellant's foregoing right to submit additional evidence and argument on the remanded matter(s)."[28]

As we explained, this holding rested on a Board Chairman's memorandum and 38 C.F.R. § 20.1304. The memorandum stated that on remand an appellant may submit new argument as a matter of right. At the same time, the memorandum made submission of additional evidence conditional on this Court permitting it in its remand directives. What's more, the memorandum said that "any additional evidence submitted by the appellant while the case is at the Board will be governed by 38 C.F.R. § 20.1304."[29]

---

[24] *Kutscherousky*, 12 Vet.App. at 370.

[25] *Id*. (quoting *Quarles v. Derwinski,* 3 Vet.App. 129, 141 (1992)).

[26] *Kutscherousky*, 12 Vet.App. at 370 (quoting *Quarles*, 3 Vet.App. at 141).

[27] *Id*. at 371.

[28] *Id.* 372.

[29] *Id*. at 371. At that time, § 20.1304 allowed "[a]n appellant . . . a period of 90 days following the mailing of notice to them that an appeal has been certified to the Board for appellate review and that the appellate record has been transferred to the Board, or until the date the appellate decision is promulgated . . . [to] submit a request for a personal hearing, additional evidence, or a request for a change in representation." Today, this regulation covers only changes in representation. *See* 38 C.F.R. § 20.1304 (2020). And so it does not help appellant here, as he does not seek to change or elect new representation on remand. To make the matter even more clear, VA adopted a separate regulation that governs legacy claims—38 C.F.R. § 20.1305—which still allows legacy claimants to change

Merging these holdings, we have established a rule that requires the Board on remand to engage in a critical examination of the justification for the decision, "reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case."[30] What's more, the Board must allow a claimant 90 days to submit additional evidence and argument. The question before us is whether these holdings apply to cases adjudicated under the AMA. To help answer this question, we must review the difference between the new AMA system and the previous appellate system that VA has since renamed the "legacy" system.[31]

## B. Legacy v. AMA

### *1. Legacy System*

In the legacy system, a claimant who disagreed with a VA decision could file an NOD.[32] After receiving a claimant's NOD, VA would make another decision, either through a decision review officer or by issuing a Statement of the Case (SOC), summarizing the evidence it considered and explaining why the benefit remained denied.[33] After VA issued the SOC or decision review officer decision, a claimant could appeal to the Board.[34] Along with the appeal, the claimant could chose to have a hearing or submit written argument or evidence.[35]

Although this process permitted frequent submission of evidence and multiple levels of review, it was not without faults—mostly, excessive delay. In describing this system, VA explained that "appeals are non-linear and may require VA staff to engage in gathering and receiving evidence and re-adjudicating appeals based on new evidence. This process of gathering evidence and readjudication can add years to the appeals process, as appeals churn between the Board and the agency of original jurisdiction."[36] Indeed, claimants could expect to wait more than

---

representation, request a hearing, and submit new evidence.

[30] *Fletcher*, 1 Vet.App. at 379.

[31] 38 C.F.R. § 19.2(c) (2020).

[32] 38 U.S.C. § 7105(a) (2016).

[33] *See generally* 38 C.F.R. § 2.600 (2016).

[34] 38 U.S.C. § 7105(d)(3) (2016).

[35] 38 U.S.C. § 7105(d)(3) (2016).

[36] VA Claims and Appeals Modernization, 83 Fed. Reg. 39,818, 39,818 (proposed Aug. 10, 2018) (to be codified at 38 C.F.R. pts. 3, 8, 14, 19, 20, 21).

5 years to receive a decision from the Board.[37] This is much more than the roughly 4 months Mr. Andrews waited for his Board decision under the AMA.

To address this delay, Congress acted. As part of this process, "VA negotiated with [veterans service organizations] and other veterans advocates to craft a proposal that would streamline VA's appeals process while protecting veterans' due process rights."[38] "To streamline the process, VA's statutory duty to assist would terminate after VA issues the original rating decision."[39] As VA explained, the changes would "allow the agency of original jurisdiction to be the claim development entity within VA and the Board to be the appeals entity."[40]

### 2. AMA System

And so, with the AMA "a whole new world began in the VA benefits adjudication system."[41] In this new world, a claimant now has three options following a VA decision. They can file (1) a request for higher level review, (2) a supplemental claim, or (3) an NOD.[42] Unlike the legacy system, the NOD is now "filed with the Board" and is used to initiate and appeal to the Board rather than simply convey disagreement with the VA decision.[43]

When appealing to the Board, the claimant has three more options: (1) a direct review docket, (2) an additional evidence docket, or (3) a hearing docket.[44] No matter which docket the claimant selects, VA's duty to assist no longer applies at the Board.[45] But the choice of docket impacts the record that the Board may consider when adjudicating a claim. In the additional evidence and hearing dockets, the claimant gets the chance to submit additional evidence to the Board.[46] But in the direct review docket, which Mr. Andrews voluntarily chose, "the evidentiary

---

[37] H.R. REP. NO. 115-135, at 5 (2017), *as reprinted in* 2017 U.S.C.C.A.N. 97, 101.

[38] *Id.*

[39] *Id.* at 3.

[40] 83 Fed. Reg. 39,818, 39,818.

[41] NAT'L VETERANS LEGAL SERVS. PROGRAM, VETERANS BENEFITS MANUAL § 12.1.1 (2020-2021 ed.).

[42] 38 U.S.C. § 5104C(1).

[43] 38 U.S.C. § 7105(b)(2)(c).

[44] 38 C.F.R. § 20.202(b) (2020).

[45] 38 U.S.C. § 5103A(e)(1).

[46] 38 U.S.C. § 7105(b)(3).

record before the Board shall be limited to the evidence of record at the time of the decision of the [AOJ] on appeal."[47]

At the same time, a claimant's selection of a Board docket is not final; Congress left it to the Secretary to develop and implement a policy for a claimant to modify an NOD and change dockets.[48] As directed, the Secretary established procedures for modifying an NOD and changing dockets. Under 38 C.F.R. § 20.202(c)(2), a claimant may modify an NOD by submitting a new NOD "within one year from the date that the [AOJ] mails notice of the decision on appeal, or within 60 days of the date that the Board receives the [NOD], whichever is later."[49] But VA will not grant a request to modify an NOD if the claimant has already "submitted evidence or testimony."[50]

Putting this together, we see that when claimants appeal to the Board, they must select one of three dockets. If they select the direct review docket, the record in the claim is limited to the evidence at the time of the AOJ decision. Claimants may change dockets within 1 year of the AOJ decision or within 60 days of when the Board receives the claimant's NOD, whichever is later. With this overview of *Fletcher* and *Kutscherousky*, as well as a better understanding of the AMA and the legacy system, we are closer to explaining how our precedent about a claimant's rights on remand applies in the AMA. But, before we may do that, we have one remaining issue.

## C. Authority to Address Remand Rights

The Secretary argues that it is premature for us to decide whether Mr. Andrews can submit new evidence on remand. We disagree. First, the Secretary's view reverses his own request in *Kutscherousky* that the Court opine about a claimant's rights on remand. And his position generally contradicts decades of practice from this Court. The Secretary has not objected to us addressing this question previously, nor does he offer compelling reasons for overruling precedent that permits us to address an appellant's rights on remand.

---

[47] 38 U.S.C. § 7113(a).

[48] *See* 38 U.S.C. § 7105(b)(4) ("The Secretary shall develop a policy to permit a claimant to modify the information identified in the [NOD] after the [NOD] has been filed under this section pursuant to such requirements as the Secretary may prescribe."); *see also* 38 U.S.C. § 7107(d) ("The Secretary shall develop and implement a policy allowing an appellant to move the appellant's case from one docket to another docket.").

[49] 38 C.F.R. § 20.202(c)(2).

[50] 38 C.F.R. § 20.202(c)(2).

What's more, the Secretary's view challenges our statutory authority to "affirm, modify, or reverse a decision of the Board or to remand the matter, as appropriate,"[51] and the requirement that "to the extent necessary to [our] decision and when presented . . . [we] decide all relevant questions of law."[52] The bottom line is that we can address a claimant's rights on remand, just as this Court has for its entire history. This finally brings us to addressing Mr. Andrews's rights on remand.

## D. Rights on Remand

As we explain, the Court finds that the statutory and regulatory provisions establishing the new appeals system, the AMA, control the result here. Recall that Congress decided that for those claimants who picked the direct review docket, such as Mr. Andrews, "the evidentiary record before the Board shall be limited to the evidence of record at the time of the decision of the [AOJ] on appeal."[53] And Congress also decided the that "duty to assist . . . shall not apply . . . to review on appeal by the Board of Veterans' Appeals."[54]

"If the intent of Congress is clear, that is the end of the matter; . . .[we] must give effect to the unambiguously expressed intent of Congress."[55] We see no ambiguity in the statute here—if Mr. Andrews remains in the direct review docket, he may not submit new evidence; or rather, the Board may not consider new evidence.[56] Nor may the Board seek out new evidence unless the AOJ failed to obtain that evidence in the first place.[57] We are not free to disregard the will of Congress on this issue.[58]

True, a claimant may change his or her docket, but Congress empowered the Secretary to choose when and how a claimant can do that. In turn, the Secretary decided that claimants will

---

[51] 38 U.S.C. § 7252(a).

[52] 38 U.S.C. § 7261(a)(1).

[53] 38 U.S.C. § 7113(a).

[54] 38 U.S.C. § 5103A(e)(2).

[55] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

[56] 38 U.S.C. § 7113(a).

[57] 38 U.S.C. § 5103A(f) ("If the Board ... during review on appeal of an [AOJ] decision, identifies or learns of an error on the part of the [AOJ] to satisfy its duties under this section, and that error occurred prior to the [AOJ] decision on appeal, unless the Secretary may award the maximum benefit in accordance with this title based on the evidence of record, the Board shall remand the claim to the [AOJ] for correction of such error and readjudication.").

[58] *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 137 S. Ct. 954, 967 (2017) ("[W]e cannot overrule Congress's judgment based on our own policy views.").

have the latter of 1 year from the AOJ decision or 60 days from when VA receives the claimant's NOD. Both deadlines have expired here. And Mr. Andrews has not argued that the regulation is invalid or would not apply to him. Thus, on remand his case will return to the direct review docket he selected. And Congress decided that, in the direct review docket, he will be unable to submit more evidence. The bottom line is that we may not instruct the Board to let Mr. Andrews submit more evidence.

Mr. Andrews argues that neither the statute nor the regulation covers remands from this Court. We disagree. The statute offers no indication that Congress sought to treat Court remands differently than direct appeals from the AOJ to the Board. And, unlike in *Kutscherousky* where we explained that when dealing with a system that was not designed with the Court in mind the statutes and regulations "'must be read in light of' the availability of judicial review and the caselaw that it produces,"[59] AMA statutes and regulations were enacted and promulgated nearly 30 years after Congress created this Court. When Congress decided at what point the record closes or when VA's duty to assist terminates, it did so with the full knowledge that this Court exists and regularly sends cases back to the Board. Even so, Congress decided that the record at the Board for claimants in the direct review docket would be fixed at the time of the AOJ decision and that the Board would have no duty to assist. The statutes contain no qualifications to suggest that Congress wanted a different result on remand from this Court.

Likewise, when VA enacted its regulations covering how a claimant may switch dockets, it did so with the knowledge that this Court would be remanding cases. VA explained that "remands require the Board to readjudicate the appeal based upon the same record previously before the Board; accordingly, such appeals would be placed on the same docket that the veteran was on previously."[60] The bottom line is, we see no reason, and have no authority, to override the text of the statute and the regulation.

Yet that is precisely what Mr. Andrews would like us to do. If we simply ordered that he be allowed to submit evidence on remand while in the direct review docket, we would flout Congress's instruction that "the evidentiary record before the Board shall be limited to the

---

[59] *Kutscherousky*, 12 Vet.App. at 372 (quoting *Linville v. West,* 165 F.3d 1382, 1386 (Fed. Cir. 1999)).

[60] VA Claims and Appeals Modernization, 84 Fed. Reg. 138, 159 (final rule Jan. 18, 2019) (to be codified at 38 C.F.R. pts. 3, 8, 14, 19, 20, 21).

evidence of record at the time of the decision of the [AOJ] on appeal."[61] And if we ordered VA to allow Mr. Andrews to pick a different docket on remand, we would have to ignore VA's regulations that provide specific deadlines for those docket changes—deadlines that have already passed. In effect, we would be again making the Board a body that newly develops and adjudicates evidence rather than the appellate body that the AMA was meant to shore up.[62] Mr. Andrews has not pointed to authority that would enable us to do any of this.

True, he has argued that he has a Due Process right to submit additional evidence, but this argument is unconvincing and underdeveloped. In his opening brief, Mr. Andrews makes only a singular assertion that the Due Process Clause requires that VA provide him a chance to submit evidence on remand.[63] This Court, like other courts, will "generally refuse to consider [arguments not] raised and properly developed in the appellant's opening brief—for which the reply brief and oral argument are not adequate substitutes."[64] Thus, Mr. Andrews has forfeited this argument.

Even if we were to consider the contentions from his reply brief, Mr. Andrews would not prevail. He does not argue that section 7113(a) is unconstitutional because it limits the scope of the record before the Board. Nor does he argue that VA's regulation about changing dockets violates his due process rights. Instead, he seems to be arguing that, because the posture of his case would change on remand, due process requires that he be allowed to submit additional evidence to the Board.

To be sure, due process requires a meaningful opportunity to be heard, but Mr. Andrews fails to articulate why that affords him an unfettered right to submit evidence on remand to the Board.[65] If VA does not grant him benefits on remand, Mr. Andrews would be free to pursue a supplemental claim where he could submit additional evidence to VA. [66] If VA denies that

---

[61] 38 U.S.C. § 7113(a).

[62] 83 Fed. Reg. 39,818, 39,818.

[63] Appellant's Br. at 15.

[64] *Braun v. Dep't of Health & Hum. Servs.*, 983 F.3d 1295, 1305 (Fed. Cir. 2020).

[65] Consider that Mr. Andrews cannot submit new evidence in this Court (38 U.S.C. § 7252(b)) and he cannot submit new evidence or seek to relitigate factual disputes at the Federal Circuit. *See* 38 U.S.C. § 7292(a). Yet there is no reasonable argument that by creating a system that limits litigants' ability to introduce new evidence, Congress has en masse violated the due process rights of all litigants.

[66] 38 C.F.R. § 20.802(c) (2020) ("After correction of any error identified in the Board's remand, the [AOJ] must readjudicate the claim and provide notice of the decision under 38 U.S.C. 5104, to include notice under 38 U.S.C. 5104C of a claimant's options for further review of the [AOJ's] decision.").

supplemental claim, he would also get the chance to submit evidence to the Board by filing an NOD and electing the hearing or additional evidence docket.[67] Neither option would jeopardize the effective date of any eventual award.[68] We have refused to find a due process violation when the Agency affords additional proceedings that would allow a full chance to be heard.[69] And Mr. Andrews does not explain how his inability to submit evidence at a specific point in his appeal process leads to a constitutional violation when the adjudication system provides "numerous opportunities throughout the course of [an] appeal to submit additional evidence and argument to challenge" a denial.[70] Thus, even if properly raised, Mr. Andrews's constitutional challenge is too poorly developed to merit review.

### E. *Fletcher* and *Kutscherousky* After the AMA

Along these same lines, at oral argument and through submission of supplemental authority, Mr. Andrews appeared to seek to argue that we should not read the AMA as an implicit repeal of our precedent from *Fletcher* and *Kutscherousky*. The problem with this argument, apart from the fact that it is raised far too late in these proceedings, is that there is no question that *Fletcher* and *Kutscherousky* remain perfectly valid. No one suggests that claimants in the legacy system are now prohibited from submitting more evidence on remand because of the AMA. Instead, Congress established a new administrative appellate structure, and the question is whether our existing precedent should be extended to this new system. As we explained, it cannot be applied to the direct review docket of the AMA. But Congress has not abrogated our legacy precedent, nor does this panel overrule it—nor could we without sitting en banc.[71] We see no way that AMA abrogates how we apply common law here.

Even if abrogation were at issue, "Congress's intent to abrogate a common law rule may be . . . implied[] where application of the common law rule would render an aspect of the statute superfluous or inoperative."[72] This is just such a case. As we explained, for claimants who appeal to the Board under the direct review docket, Congress has limited the record before the Board to

---

[67] 38 U.S.C. § 7105(b)(3).

[68] 38 C.F.R. § 3.2500(h)(1) (2020).

[69] *Hime v. McDonald*, 28 Vet. App. 1, 9 (2016), *aff'd sub nom. Hime v. Shulkin*, 681 F. App'x 976 (Fed. Cir. 2017).

[70] *Williams v. Wilkie*, 32 Vet. App. 46, 59 (2019), *aff'd*, 828 F. App'x 721 (Fed. Cir. 2020).

[71] *Tobler v. Derwinski,* 2 Vet. App. 8, 11–12 (1991).

[72] *Rios v. Nicholson*, 490 F.3d 928, 931 (Fed. Cir. 2007).

the evidence at the time of the AOJ decision. To let Mr. Andrews submit new evidence, we would need to make this provision of the AMA inoperative. This we cannot do.

This is not to say that the direct review docket of AMA removed all value from *Kutscherousky* or *Fletcher*. True, we may not order the Board to ignore the statutes and regulations that limit the record on appeal or limit the Board's duty to assist, but we still expect that the Board will "reexamine the evidence of record, seek any other evidence [if the AOJ failed to satisfy its duty to assist—as it did here], and issue a timely, well-supported decision."[73] "We [still] do not mean to imply that a remand, such as is done here, is merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement of 38 U.S.C. § 7104(d)(1)."[74]

Even so, we need not provide a specific instruction to this effect because "it is unnecessary."[75] Without a doubt, this part of *Kutscherousky* remains compatible with the AMA. It is the law that controls the claimants' rights on remand.[76] Neither appellant nor the Secretary has suggested that any changes in the law would permit the Board to issue superficial decisions on remand that merely rewrite its previous opinion to comply with its reasons or bases requirement. But there have been significant legal changes that limit the Board's ability to consider or develop evidence following an AOJ decision. Here, Mr. Andrews picked the direct review docket, so the Board will be unable to consider new evidence on remand. And so, we will not instruct the Board that the *Kutscherousky* provision about submitting additional evidence applies on remand.[77] Likewise, the AMA limits *Fletcher* as far as we have previously instructed the Board to seek evidence based on a duty to assist at the Board level.

---

[73] *Fletcher*, 1 Vet.App. at 397.

[74] *Id.* at 397.

[75] *Kutscherousky*, 12 Vet.App. at 371.

[76] *Id.*

[77] In his opening brief, Mr. Andrews did not develop arguments about submitting argument to the Board on remand. Thus, the Court does not address whether the AMA limits submission of argument on remand. Even so, it does appear that VA has weighed in on this issue when it adopted AMA regulations and explained that "[a]lthough the modernized review system confines evidence submission to certain periods, the statute and proposed regulations do not—apart from creating a faster review process—restrict a representative's ability to submit argument." 84 Fed. Reg. 138, 138.

We will simply remand this case so that the Board may address the errors identified by the parties—inadequate reasons and bases for denying a rating under DC 5259 and relying on the inadequate VA medical exam. On remand, the Board must address whether Mr. Andrews has symptoms attributable to his partial meniscectomies that are not already compensated under different DCs, and it must obtain a new medical exam of Mr. Andrew's knees.

### III. CONCLUSION

For these reasons, we SET ASIDE and REMAND those parts of the January 17, 2019, Board decision that denied entitlement to a rating above 10% for chondromalacia of the right patella with DJD and a rating above 10% for DJD of the left knee.