﻿Citation Nr: 18124187
Decision Date: 08/06/18 Archive Date: 08/06/18

DOCKET NO. 14-19 854A
DATE: August 6, 2018
ORDER
The claim for a compensable rating for erectile dysfunction is denied.
The claim for an effective date earlier than December 27, 2004 for diabetes mellitus, type II is denied.
The claim for an effective date earlier than January 17, 2006 for diabetic neuropathy of the left lower extremity is denied.
The claim for an effective date earlier than January 17, 2006 for diabetic neuropathy of the right lower extremity is denied.
The claim for an effective date earlier than April 4, 2006 for special monthly compensation (SMC) for loss of use of a creative organ is denied.
REMANDED
The claim for service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), is remanded.
The claim for service connection for the left shoulder disorder is remanded.
The claim for service connection for low back disorder is remanded.
The claim for an initial rating greater than 20 percent for diabetes mellitus, type II is remanded.
The claim for an initial rating greater than 10 percent for left lower extremity disability is remanded.
The claim for an initial rating greater than 10 percent for a right lower extremity disability is remanded.
FINDINGS OF FACT
1. The evidence is against a finding of penile deformity.
2. Prior to December 27, 2004, and after the April 1999 final denial, there was no formal claim, informal claim, or written intent to file a claim to reopen a claim of entitlement to service connection for diabetes mellitus, type II.
3. VA was first aware that the Veteran had bilateral lower extremity diabetic neuropathy on January 17, 2006, the current effective date for the grant of separate compensable ratings for each lower extremity, for diabetic neuropathy. 
4. VA was first aware that the Veteran’s erectile dysfunction (ED) was due to service-connected diabetic neuropathy on April 4, 2006, the current effective date for the grant of special monthly compensation for loss of use of a creative organ.
CONCLUSIONS OF LAW
1. The criteria for an initial compensable disability rating for erectile dysfunction are not met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.3, 4.31, 4.115b, Diagnostic Code 7522 (2018).
2. The criteria for an effective date earlier than December 27, 2004 for diabetes mellitus, type II, are not met. 38 U.S.C. §§ 5110, 5107 (2012); 38 C.F.R. §§ 3.155, 3.157, 3.400 (2018).
3. The criteria for an effective date earlier than January 17, 2006 for diabetic neuropathy of the left lower extremity, are not met. 38 U.S.C. §§ 5110, 5107 (2012); 38 C.F.R. §§ 3.155, 3.157, 3.400 (2018).
4. The criteria for an effective date earlier than January 17, 2006 for diabetic neuropathy of the right lower extremity, are not met. 38 U.S.C. §§ 5110, 5107 (2012); 38 C.F.R. §§ 3.155, 3.157, 3.400 (2018).
5. The criteria for an effective date earlier than April 4, 2006 for special monthly compensation for loss of use of a creative organ, are not met. 38 U.S.C. §§ 5110, 5107 (2012); 38 C.F.R. §§ 3.155, 3.157, 3.400 (2018).
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
The Veteran served on active duty in the U.S. Army from January 1979 to February 1992.
In August 2017, the Veteran testified during a Board videoconference hearing before the undersigned Veterans Law Judge; a transcript of the hearing is of record. During the hearing, the undersigned left the record open for 60 days extension for submission of additional evidence. 
The Board observes that additional evidence was obtained by VA and associated with the Veteran’s electronic claims file that has not been reviewed by the AOJ in connection with the present appeal. The additional evidence is not relevant to the Veteran’s claim for a higher rating for erectile dysfunction or the effective dates for service connection for diabetes mellitus, type II, lower extremity disabilities, and special monthly compensation; thus, the Board may proceed to adjudicate those claims. 
1. An initial compensable rating for erectile dysfunction is denied.
Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The Rating Schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of or incident to military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1.
Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. All benefit of the doubt will be resolved in the Veteran’s favor. 38 C.F.R. § 4.3.
A veteran’s entire history is to be considered when making disability evaluations. See generally 38 C.F.R. 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where the appeal arises from the original assignment of a disability evaluation following an award of service connection, the severity of the disability at issue is to be considered during the entire period from the initial assignment of the disability rating to the present time. See Fenderson v. West, 12 Vet. App. 119 (1999). Where entitlement to compensation has already been established and increase in disability rating is at issue, present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Thus, although the Board has thoroughly reviewed all evidence of record, the more critical evidence consists of the evidence generated during the appeal period. Further, the Board must evaluate the medical evidence of record since the filing of the claim for increased rating and consider the appropriateness of a “staged rating” (i.e., assignment of different ratings for distinct periods of time, based on the facts). See Hart v. Mansfield, 21 Vet. App. 505 (2007); see also Fenderson v. West, 12 Vet. App. 119 (1999).
The Veteran’s erectile dysfunction is rated as non-compensable under Diagnostic Code 7522, which provides for a 20 percent rating for deformity of the penis with loss of erectile power. Without deformity of the penis, erectile dysfunction is noncompensable.
Based on the evidence of record, the Board finds that the Veteran’s erectile dysfunction does not warrant a compensable rating at any time pertinent to the appeal. Although the competent and credible lay evidence of record confirms that the Veteran has erectile dysfunction, he is not shown to have a penile deformity at any time pertinent to the current appeal. A September 2010 VA examination report addressed the Veteran’s ED and treatment with oral medication but did not indicate that any penis deformity was reported or observed. VA treatment records do not indicate any penis deformity. Moreover, when specifically asked whether he had a penis deformity during the hearing before the Board, the Veteran denied having the same. See Transcript page 38. 
As the evidence does not show that the Veteran has a penis deformity in addition to the erectile dysfunction, a compensable evaluation is not warranted. See 38 C.F.R. §§ 4.31, 4.115b, Diagnostic Code 7522. The Board notes, however, that the Veteran has already been granted a special monthly compensation for loss of use of a creative organ since the date of entitlement to service connection in April 2006.
For these reasons, the preponderance of the evidence is against the claim for a compensable rating for erectile dysfunction. There is no doubt to be resolved in favor of the Veteran. 
Effective Date
The present appeal arises from the Veteran’s disagreement with the assigned effective dates for the diabetes mellitus, type II, bilateral lower extremity disabilities, and special monthly compensation for loss of use of a creative organ. 
Generally, if a claim is received within one year after separation from service, the effective date shall be “day following separation from active service.” 38 C.F.R. § 3.400(b)(2). Otherwise, the effective date shall be date of claim or date entitlement arose, whichever is later. Id. The effective date for a reopened claim, after a final disallowance, shall be the date of receipt of the new claim or date entitlement arose, whichever is later. 38 C.F.R. § 3.400(q)(2), (r) (2018).
Effective March 24, 2015, VA amended its regulations to require that all claims governed by VA’s adjudication regulations be filed on a standard form. See 79 Fed. Reg. 57660 (Sept. 25, 2014). The amendments implement the concept of an intent to file a claim for benefits, which operates similarly to the informal claim process, but requires that the submission establishing a claimant’s effective date of benefits must be received in one of three specified formats. The amendments also eliminate the constructive receipt of VA reports of hospitalization or examination and other medical records as informal claims to reopen under 38 C.F.R. § 3.157. See 79 Fed. Reg. 57,660 (Sept. 25, 2014) (now codified at 38 C.F.R. §§ 3.1(p), 3.151, 3.155). The amendments apply only to claims filed on or after March 24, 2015. Because the Veteran’s claim to reopen the claim for service connection for diabetes mellitus was submitted prior to that date, the former regulations apply, as provided below.
Under the former regulations, any communication or action indicating an intent to apply for one or more benefits under laws administered by VA from a claimant may be considered an informal claim. Such informal claim must identify the benefit sought. Upon receipt of an informal claim, if a formal claim has not been filed, an application form will be forwarded to the claimant for execution. 38 C.F.R. § 3.155(a). To determine when a claim was received, the Board must review all communications in the claims file that may be construed as an application or claim. See Quarles v. Derwinski, 3 Vet. App. 129, 134 (1992).
Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits. VA shall consider all information and lay and medical evidence of record in a case and when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990). 
2. Entitlement to an effective date earlier than December 27, 2004 for diabetes mellitus, type II
In this case, the Veteran originally claimed entitlement to service connection for diabetes mellitus, type II in January 1998. The AOJ denied the claim in April 1999 and although the Veteran filed a notice of disagreement, he did not perfect the appeal following issuance of the June 1999 statement of the case. Thus, the April 1999 rating decision became final. 
In reaching this conclusion, the Board acknowledges the Veteran’s statement received in January 2000 in which he informed VA of a new address and indicated that he had not received his “appellate form” with respect to his disagreement with a separate claim for increase that was also addressed in the June 1999 statement of the case. Notably, he did not report that he did not receive the statement of the case. The Board observes that the June 1999 statement of the case was sent to the same address provided on the Veteran’s May 1999 notice of disagreement. The Veteran did not indicate an intent to continue the appeal for service connection for diabetes mellitus. 
In July 2010, the Board found the April 1999 rating decision to be final when it reopened the claim for service connection for diabetes mellitus. The Veteran did not appeal the Board’s determination. Thus, the Board’s decision became final on this point and remains so, short of a finding of clear and unmistakable error (CUE) in the Board’s July 2010 decision. There is no allegation of CUE as to the Board’s finding of the finality of the April 1999 rating decision. As such, the Board continues to find that the April 1999 rating decision was final. 
The Veteran’s next communication regarding service connection for diabetes mellitus following the June 1999 statement of the case was his claim to reopen the claim for service connection, received December 27, 2004. When the AOJ implemented the grant of service connection, it assigned the effective date as December 27, 2004 for diabetes, the date of the Veteran’s claim to reopen. 
While the Veteran believes that the effective date for the award of service connection for diabetes mellitus, type II should be earlier than assigned by the AOJ, the provisions of the law governing effective date of reopened claims after a final disallowance, provide the date is either the date of receipt of the new claim or date entitlement arose, whichever is later. 38 C.F.R. § 3.400(q)(2), (r). Here, the latter of either when entitlement arose (i.e., when first diagnosed), or the date of receipt of the claim to reopen, is the date of the December 2004 claim to reopen. In this case, the AOJ assigned an effective date of December 27, 2004, the date of receipt of the Veteran’s claim to reopen for service connection, which is the earliest date allowable under the applicable criteria discussed above. 38 C.F.R. § 3.400 (q)(2), (r). Consequently, the Board concludes that the claim for an earlier effective date must be denied. 
3. Entitlement to an effective date earlier than January 17, 2006 for diabetic neuropathy of the left and right lower extremities.
In this case, a VA treatment record dated January 17, 2006 documented the Veteran’s initial report of pain in the lower extremities, and diagnosed diabetic neuropathy in both lower extremities.
While the Veteran believes that the effective date for the award of service connection for diabetic neuropathy of the bilateral lower extremities should be earlier than assigned by the AOJ, the provisions of the law governing effective date of awards of benefits provide the date is either the date of receipt of a claim, or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. §§ 3.400(b)(2)(i). Here, the latter of either when entitlement arose (i.e., when first diagnosed), or the date of claim, is the date that diabetic neuropathy was diagnosed. In this case, the AOJ assigned an effective date of January 17, 2006, the date that diabetic neuropathy was first diagnosed in the lower extremities, which is the earliest date allowable under the applicable criteria discussed above. 38 C.F.R. §§ 3.400(b)(2)(ii). Consequently, the Board concludes that the claim for an earlier effective date must be denied. 
4. Entitlement to an effective date earlier than April 4, 2006 for special monthly compensation for loss of use of a creative organ.
In this case, an August 2004 VA treatment record showed a diagnosis of erectile dysfunction (ED) but at that time, the diagnosis was noted to be secondary to (non-service connected) hypogonadism. The first record indicating that ED was due to diabetes mellitus is dated April 4, 2006. That was the first record that determined the Veteran’s ED was not due to hypogonadism or psychological causes. Thus, that is the date that the Veteran’s entitlement to service connection for ED, and special monthly compensation, arose. 
While the Veteran believes that the effective date for the award of special monthly compensation for loss of use of a creative organ should be earlier than that assigned by the AOJ, the provisions of the law governing the effective date of awards of benefits provide the date is either the date of receipt of a claim, or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. §§ 3.400(b)(2)(i). Here, the latter of either when entitlement arose (i.e., when the ED was first associated with service-connected diabetes mellitus), or the date of claim, is the date that entitlement arose. In this case, the AOJ assigned an effective date of April 4, 2006, the date that ED was first associated with diabetes mellitus, which is the earliest date allowable under the applicable criteria discussed above. 38 C.F.R. §§ 3.400(b)(2)(ii). Consequently, the Board concludes that the claim for an earlier effective date must be denied. 
REASONS FOR REMAND
1. Service connection for an acquired psychiatric disorder, to include PTSD.
During the pendency of the appeal the Veteran has been diagnosed with dysthymic disorder, bipolar disorder, depression, anxiety and PTSD. 
He claims his psychiatric disability—in particular PTSD—is related to one of several in-service stressors. They are as follows:
• Witnessed a fellow soldier commit suicide by jumping out a window, and that holding his fellow soldier’s body when he passed away. In an October 2010 Statement, the Veteran stated that the incident occurred in 1985, in Spangdahlem Air Force Base, Germany. He indicated that his unit assigment at the time was “HHB 2 CAS 2nd ACR”. In a subsequent statement received in June 2011, the Veteran reported the same stressor, but indicated it took place between 1979 and 1982 in Furth or Nuremburg, Germany. At the hearing before the Board in August 2017, the Veteran indicated the incident took place in Nuremburg, Germany. The Veteran reported the name of the deceased soldier as “Sanchez” at a March 2017 VA examination, and “Guerrero” or “Guerrera” at the August 2017 hearing.
• Observed combat in Honduras in 1983 or 1984, where he thought Guatemalans were shooting at Hondurans. See the March 2017 VA examiner’s report. At the August 2017 hearing, the Veteran reported he was deployed to Honduras for five and a half months building air strips, while he was with the 46th Engineer Battalion trained at Fort Rucker, Alabama.
• Observed combat with his Army Reserve Unit in 1997, when he was called up to serve on active duty in Saudi Arabia for one year from 1997 to 1998. He indicated he could hear people shooting. See the August 2017 VA examiner’s report.
• While serving in Korea in 1990 or 1991, sat in the same room with his roommate who was thrown out of a window by the Korean mafia. See the August 2017 VA examiner’s report. The Veteran provided his roomate’s full name, abbreviated here as “J.W.” in the August 2017 examination report, at page 5. 
The agency of original jurisdiction (AOJ) has not attempted to verify these stressors. In a September 26, 2011 letter, the AOJ indicated that the Veteran did not provide enough information to send the Veteran’s claimed stressor regarding his fellow soldier’s suicide to the US Army and Joint Services Records Research Center (JSRRC). At the time, the Veteran had only provided information regarding that particular stressor. As noted above, the Veteran has provided different accounts as to the dates and location of this event.
Although some of the Veteran’s service personnel records are on file, it is unclear whether these records are complete. There appears to be a page missing in his service summary, prior to Section VII, pertaining to Current and Previous Assignments. Additionally, his reserve service dates following his period of active service in 1992 are also unclear. These are relevant to the appeal, as the Veteran claims he was called to active duty to serve in Saudi Arabia for a year in 1997. The Veteran’s service records that are of record confirm service in Germany from September 1979 to February 1982, and from April 1985 to April 1988. They also confirm service in Korea from October 1990 to February 1992. There is no indication of a deployment to Honduras. There is also nothing confirming a call-up to active duty in 1997 for one year of service in Saudi Arabia. 
On remand, the Veteran should be afforded another opportunity to provide all relevant information he can remember pertaining to the dates, locations, and circumstances of his claimed in-service stressors. The AOJ should take all appropriate steps to verify the Veteran’s periods of active duty service, and obtain any outstanding service personnel records that may exist, if any. Upon receipt of this information, the AOJ should make all reasonable attempts to verify his in-service stressors. 
The AOJ should also schedule the Veteran for another VA psychiatric examination to clarify his diagnosis or diagnoses, and to obtain an opinion addressing the relationship, if any, of any current disorder to his service. 
2. Service connection for the left shoulder disorder is remanded.
The Board observes that the AOJ provided the Veteran a VA examination for the left shoulder in September 2011 and obtained a VA opinion regarding any relationship between the Veteran’s current left shoulder disability and service, in October 2011. In expressing the negative opinion as to any relationship between the Veteran’s current left shoulder disorder and service, the VA examiner did not discuss or appear to consider the Veteran’s reports of continuity of left shoulder symptomatology since he injured his shoulder in service. 
The Veteran offered sworn testimony that he injured his left shoulder in service in 1980 and has not experienced any intervening left shoulder injury. He also reported that since service, his left shoulder aches all the time, always has pain and pulling, and that he cannot raise his left arm very high. Transcript page 3. Based on this testimony, the Board believes an addendum opinion is required. 
3. Service connection for low back disorder is remanded.
The Board observes that the AOJ provided the Veteran with VA examinations in September 2011 and May 2018, and obtained a VA nexus opinion in October 2011. In expressing negative opinions as to any relationship between the Veteran’s current back disorder and service, the VA examiners did not discuss or appear to consider the Veteran’s reports of continuity of back symptomatology since he injured his back in service. Moreover, the Veteran acknowledged that he re-injured his back post-service, in 2004, but reported that he had already been diagnosed with degenerative disc disease prior to the 2004 slip and fall event. A VA treatment record dated in March 2000 confirms that the Veteran had a diagnosis of degenerative joint disease in the lumbar spine. The VA examinations did not adequately address the nature of any degenerative disease that was present prior to the 2004 injury. For these reasons, an addendum opinion is required. 
4. The claim for an initial rating greater than 20 percent for diabetes mellitus, type II as well as greater than 10 percent, each, for left and right lower extremity disabilities, are remanded. 
During the Veteran’s Board hearing, the Veteran reported that his diabetes mellitus symptoms including eyesight and numbness in his feet, as well as bilateral lower extremity neuropathy, had worsened. See Transcript pages 32-34. Thus, to ensure that the record includes sufficient medical evidence to properly evaluate the disabilities under consideration, the Board finds that a more contemporaneous examination is needed. See 38 C.F.R. § 5103A; 38 C.F.R. § 3.159; Snuffer v. Gober, 10 Vet. App. 400, 403 (1997). See also Green v. Derwinski, 1 Vet. App. 121, 124 (1991) (VA has a duty to provide a veteran with a thorough and contemporaneous medical examination).
Additionally, in August 2017, the Veteran’s attorney informed the Board that private treatment records were outstanding and pertinent to the claims. These records should be requested and obtained on remand. 
Finally, the Board observes that the claims must be readjudicated based on review of all the evidence as pertinent evidence including VA examination reports and VA treatment records, was obtained by the AOJ and associated with the file after issuance of the most recent statement of the case dated in June 2014 and transfer of the appeal to the Board in August 2015. The Veteran has not waived review of the evidence obtained by the AOJ. 
The matters are REMANDED for the following action:
1. Ask the Veteran to complete a VA Form 21-4142 for any outstanding private treatment records so that VA may obtain them on the Veteran’s behalf. Specifically ask the Veteran to complete the form for Drs. J.W. and H.R., identified in August 2017 correspondence from the Veteran’s attorney. Make two requests for the authorized records from Drs. J.W. and H.R., unless it is clear after the first request that a second request would be futile.
2. Afford the Veteran another opportunity to provide VA with all relevant information he can remember pertaining to the dates, locations, and circumstances of his claimed in-service stressors, to specifically include the four stressors discussed above. 
3. Take all appropriate steps to verify the Veteran’s periods of active duty service, active duty for training (ACDUTRA) and inactive duty for training (INACDUTRA). Request and obtain any outstanding service personnel records that may exist, if any. 
4. After obtaining stressor information from the Veteran, validating service dates, and confirming all available service personnel records are on file, take all steps deemed appropriate to verify the Veteran’s claimed stressors. 
5. Schedule the Veteran for a VA psychiatric examination to clarify his current diagnosis or diagnoses, and determine whether the Veteran has any acquired psychiatric disorder that is related to service. A copy of the electronic claims file, to include a copy of this Remand, should be sent to, and reviewed by the examiner. The examiner is asked to address the following.
(a.) Identify any acquired psychiatric disorder for which the Veteran has had a diagnosis since filing this claim. 
In providing a response, please note that the Veteran has previously been diagnosed with PTSD, dysthymic disorder, depression, anxiety, and bipolar disorder. If current diagnoses conflict with prior diagnoses, or do not include prior diagnoses, the examiner should attempt to reconcile prior and current findings to the extent possible.
(b.) Specifically, if PTSD is diagnosed, please discuss the stressor or stressors upon which the diagnosis is based, to include whether the Veteran experienced a specific stressor event related to the Veteran’s fear of hostile military or terrorist activity. 
(c.) For each disorder other than PTSD identified, opine as to whether it is at least as likely as not (i.e. a 50 percent or greater probability) that such disorder had onset in, or is otherwise related to service. 
All medical opinions should be supplemented with a clinical explanation in support. 
6. Schedule the Veteran for a VA orthopedic examination to determine whether the Veteran has a back or left shoulder disorder that is related to service. A copy of the electronic claims file, to include a copy of this Remand, should be sent to, and reviewed by the examiner. The examiner is asked to address the following.
(a.) Identify all back and left shoulder disorders, present during the pendency of the claim. 
(b.) For each disability identified, opine as to whether it is at least as likely as not (i.e. a 50 percent probability) that such disability had onset in, or is otherwise related to service. In reaching any conclusion, the examiner must consider and discuss the significance, if any, of the Veteran’s competent reports of continuity of low back and left shoulder symptomatology since service. The examiner must also consider that prior to the 2004 slip and fall at work, in which the Veteran admits he re-injured his spine, VA had already diagnosed the Veteran with degenerative changes of the lumbar spine. 
Responsive examination reports should be associated with the file. All medical opinions should be supplemented with a clinical explanation in support. 
7. Schedule the Veteran for a VA examination(s) to determine the current severity of the Veteran’s diabetes mellitus, type II. A copy of the electronic claims file, to include a copy of this Remand, should be sent to, and reviewed by the examiner. The examiner is asked to consider the Veteran’s sworn testimony that his eyesight and bilateral feet numbness is worse, and afford the Veteran the appropriate evaluation for these complaints.
Responsive examination report(s) should be associated with the file. All medical opinions should be supplemented with a clinical explanation in support. 
8. Schedule the Veteran for a VA examination to determine the current severity of the Veteran’s bilateral lower extremity diabetic neuropathy. A copy of the electronic claims file, to include a copy of this Remand, should be sent to, and reviewed by the examiner. 
Responsive examination reports should be associated with the file. All medical opinions should be supplemented with a clinical explanation in support. 
9. After accomplishing the above, as well as any other development deemed appropriate based on the information obtained on remand, readjudicate the issues on appeal. If any claim on appeal is not fully granted, a SSOC should be furnished to the Veteran and his representative, and provide an appropriate period of time for response.

 
V. Chiappetta
Veterans Law Judge
Board of Veterans’ Appeals
ATTORNEY FOR THE BOARD Donna D. Ebaugh, Counsel